## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUAN AVILA
9728 51st Place
College Park, MD 20740

and

DWANE BURROWS
2525 Catskill Street
Waldorf, Maryland 20603

    Plaintiffs,

v.

LPC COMMERCIAL SERVICES, INC.,
d/b/a Lincoln Property Company
Washington, D.C.
101 Constitution Ave., NW, Suite 325
Washington, D.C. 20001

<u>Serve</u>:  CT Corporation System
        1015 15th St NW
        Suite 1000
        Washington, D.C. 20005

and

LINCOLN PROPERTY COMPANY
2000 McKinney Avenue
Suite 1000
Dallas, Texas 75201

<u>Serve</u>:  CT Corporation System
        1999 Bryan Street
        Suite 900
        Dallas, Texas 75201

    Defendants.

Civil Case No.:_____

**\*JURY TRIAL DEMANDED\***

## COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiffs, Juan Avila and Dwane Burrows, (hereinafter collectively "Plaintiffs"), by and through their counsel, Brian J. Markovitz, Esq., and the law firm of Joseph, Greenwald & Laake, P.A., and file this lawsuit and sues LPC Commercial Services, Inc. (d/b/a Lincoln Property Company Washington, D.C.) and Lincoln Property Company, (hereinafter "Defendants" or "LPC"), for unlawful discrimination and retaliation in violation of the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.*, ("DCHRA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.*, ("Title VII"), and as cause therefore state the following:

## JURISDICTION AND VENUE

1. This action for unlawful discrimination and retaliation is brought pursuant to 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3(a).  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

2. The Court may exercise supplemental jurisdiction over Plaintiffs' claims arising under the DCHRA pursuant to 28 U.S.C. § 1367.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

4. A substantial portion of the events or omissions giving rise to this action occurred within the District of Columbia where Plaintiffs performed their job duties for Defendants.

5. Plaintiffs have exhausted their administrative remedies and commence this action more than 180 days after filing their respective Charge of Discrimination with the Equal Employment Opportunity Commission, ("EEOC"), and within 90 days of their respective receipt of Notice of Right to Sue.

## **PARTIES**

6.      Plaintiff, Juan Avila, a Hispanic male born in El Salvador, is a former employee of Defendants and resides in Maryland.  At all times relevant to this action, Plaintiff Avila was employed by Defendants as an Assistant Engineer.

7.      Plaintiff, Dwane Burrows, an African-American male, is a former employee of Defendants and resides in Maryland.  At all times relevant to this action, Plaintiff Burrows was employed by Defendants as a Chief Engineer.

8.      Defendant LPC Commercial Services, Inc. (d/b/a Lincoln Property Company) is a foreign corporation organized under the laws of Texas, licensed to conduct business in Washington, D.C., and engaged in the lawful business of commercial and residential real estate. At all times relevant to this action, Plaintiffs were employed by Defendant LPC Commercial Services, Inc. and performed their job duties in Washington, D.C.  Defendant LPC Commercial Services, Inc. is a wholly owned subsidiary of Defendant Lincoln Property Company.

9.      Defendant Lincoln Property Company is a corporation organized under the laws of Texas engaged in the lawful business of commercial and residential real estate throughout the United States.  Defendant Lincoln Property Company is the parent company of Defendant LPC Commercial Services, Inc.

10.      Defendants are "employers" within the meaning of the DCHRA and Title VII.

11.      Defendant Lincoln Property Company maintains a significant degree of control over the operations of Defendant LPC Commercial Services, Inc. that Defendants are sufficiently intertwined so as to be considered a single "integrated employer" of Plaintiffs.  Pertinently, Defendants operate as a single business unit, share policy manuals, share payroll and insurance

programs, share a centralized source of authority for development of personnel policies, share a

human resources department, and the same persons make employment decisions for both entities.

## FACTS COMMON TO ALL COUNTS

12.     On or around 2000, LPC hired Plaintiff Avila, a Hispanic male born in El Salvador,

as an Assistant Engineer.  At all times relevant during his tenure with LPC, Mr. Avila met and/or

exceeded his performance expectations.

13.     On or around late 2001, LPC hired Plaintiff Burrows, an African-American male,

to as a Chief Engineer.  At all times relevant during his tenure with LPC, Mr. Burrows met and/or

exceeded his performance expectations.

14.     On or around 2015, LPC hired Nancy Caprini as a Senior Property Manager.  At

all times relevant, Ms. Caprini served in a managerial and/or supervisory capacity at LPC's

Washington, D.C. offices, and any and all such conduct and/or actions by Ms. Caprini were ratified

by LPC.

15.     On or around February 2, 2016, LPC assigned John Johnson to a role as the

Operation Manager overseeing Mr. Burrows and Mr. Avila's positions.  Upon information and

belief, Mr. Johnson is a close friend of his superior, Jeffrey Beard, the Chief of Engineering.

During all relevant times mentioned herein, Mr. Johnson served in a managerial and/or supervisory

capacity at LPC's Washington, D.C. offices, and any and all such conduct and actions by Mr.

Johnson were ratified by LPC.

16.     Beginning on or around November, 2015 and continuing until his constructive

discharge in or around October, 2016, Ms. Caprini repeatedly made derogatory remarks to and

about Mr. Avila at LPC on this basis of his race and national origin.  This included referring to

Mr. Avila as "Julio," "Mexican," and "Amigo."

17.     Mr. Burrows, who acted as Mr. Avila's direct supervisor during this respective period of time, personally witnessed Ms. Caprini make statements to and about Mr. Avila at LPC on this basis of his race and national origin.

18.     Mr. Burrows had multiple conversations with Ms. Caprini where she called Mr. Avila "stupid" or "idiot" and indicated that he was not intelligent because of his race, Hispanic, and/or national origin.  In repeated conversations, on an almost daily basis, Ms. Caprini explicitly referred to Mr. Avila as "Mexican," "idiot," or "dummy" in the same few sentences while speaking to Mr. Burrows.

19.     Ms. Caprini made these remarks with the knowledge that Mr. Avila is not from Mexico or of Mexican heritage.

20.     Ms. Caprini also referred to Mr. Avila directly as "Julio," despite multiple attempts by both Mr. Avila and Mr. Burrows to correct her.  Mr. Burrows personally observed and witnessed, on several occasions, Ms. Caprini directly calling Mr. Avila "Julio" when she knew that Mr. Avila's first name is Juan.

21.     When Mr. Burrows explicitly told Ms. Caprini that Mr. Avila was actually Salvadoran and not Mexican, Ms. Caprini replied, "Julio or whatever he is."

22.     On the basis of Mr. Avila's race and national origin, Ms. Caprini regularly treated Mr. Avila poorly and in a disparate manner.

23.     For example, on or around December 2015, Mr. Avila had a family emergency, which forced him to travel to El Salvador for several days.  Despite making a request for leave in accordance with company policies and having leave available, Ms. Caprini took the unusual step of denying his request with no explanation given.  As a result, Mr. Avila was forced to take leave without pay in order to travel to El Salvador to handle his family emergency.

24.     On or around January 22 through January 24, 2016, Mr. Avila was assigned to perform a "freeze watch" job during a snowstorm. This type of job required him to stay on location at a worksite to clean and spread salt at designated times. Due to dangerous road conditions, Mr. Avila was forced to stay overnight at the work site. As a result, Mr. Avila spent an extended period at the worksite without access to whole meals or his medications.

25.     After performing his tasks, Mr. Avila requested fourteen (14) hours of pay to cover the time he spent at the worksite performing his duties. However, Ms. Caprini reduced Mr. Avila's request to only seven (7) hours, refusing to pay Mr. Avila for the full time he spent at the worksite and denying him potential overtime pay. She provided no rationale for denying Mr. Avila' the full fourteen (14) hours of pay.

26.     On or around February 15, 2016, Mr. Avila reached out to Mr. Burrows to discuss Ms. Caprini's actions regarding her failure to pay his stated hours.

27.     Based on Mr. Burrows' advice, on or about March 8, 2016, Mr. Avila sent an email to Nancy Hogin, Vice President of Human Resources, and Damon Sutton, Human Resources Administrator, regarding Ms. Caprini's improper payroll reduction. However, none of these individuals provided Mr. Avila with any assistance, and Ms. Caprini's campaign of harassment and disparate treatment towards Mr. Avila continued.

28.     On or about April 1, 2016, without any prior warning, Mr. Avila's designated parking space at his assigned building was rented out to a vendor by Ms. Caprini. Mr. Avila had been using that parking spot for years and was never informed by Ms. Caprini or any other LPC employee that his parking space was going to be rented out. Ms. Caprini told Mr. Avila to use an alternative parking spot approximately seven blocks away from the building, resulting in him having to walk a significant distance to get to work.

29.     On or about April 13, 2016, Mr. Avila received an email from Jeff Beard, the Director of Engineering, concerning Ms. Caprini's to rent out his parking spot without informing him. In the email, Mr. Beard complained that Mr. Avila was "making a big stink about parking." Mr. Beard also stated in the email, "Boy, language is an issue."

30.     On or about May 26, 2016, Ms. Caprini called Mr. Avila while he was working and accused him, without any evidence, of making inappropriate and false communications with tenants.  Mr. Avila was confused by her allegations, and she proceeded to insult Mr. Avila on the basis of his race and national origin, calling him "stupid," and stated that everything Mr. Avila does for the company is "trash."

31.     On or about June 10, 2016, Mr. Avila received a disciplinary notice for alleged lack of communication/not following supervisor's instructions, his first disciplinary action during his almost sixteen year tenure working for LPC.

32.     In the disciplinary notice, it states that in Mr. Avila's 2014 Employee Review, he received "less than 'satisfactory' regarding [his] communication skills."  However, this is false. Mr. Avila had always received at least satisfactory ratings in his annual Employee Reviews. In 2014, Mr. Avila received a rating of "Meets Expectations/Requirements – Good" for verbal communication and was rated above the rating of "Needs Improvement in Meeting Expectations/Requirements – Satisfactory" for written communication.

33.     In response to the Disciplinary Notice, on or around June 10, 2016, Mr. Avila submitted a rebuttal. Therein, Mr. Avila explained that the communication issues were caused by a broken cell phone and lack of cellular coverage in certain areas where he commonly works. However, his explanations were ignored.

34.     Ms. Caprini attempted to incorporate other LPC employees in to her campaign of discriminatory harassment and treatment towards Mr. Avila on the basis of his race and national origin, including Mr. Burrows.

35.     On several occasions after November 2015, Ms. Caprini requested that Mr. Burrows take disciplinary action against Mr. Avila, including writing him up, despite Mr. Avila meeting and/or exceeding his performance expectations.  Mr. Burrows told Ms. Caprini that there were no grounds upon which to discipline Mr. Avila as he was meeting and/or exceeding his performance expectations.

36.     Ms. Caprini requested that Mr. Burrows take disciplinary action towards Mr. Avila on the basis of his race and national origin.

37.     Mr. Burrows asked Ms. Caprini to give reasons why he should discipline Mr. Avila. Ms. Caprini provided reasons that Mr. Burrows knew to be false or invalid, and Mr. Burrows was concerned that she was requesting such disciplinary actions out of a discriminatory animus.

38.     In response to Ms. Caprini's request, Mr. Burrows told Ms. Caprini that he did not think it was fair to discipline Mr. Avila. Mr. Burrows further informed Ms. Caprini the he was concerned that she had a discriminatory bias against Mr. Avila.

39.     Mr. Burrows refused to discipline Mr. Avila in accordance with Ms. Caprini's wishes.

40.     Mr. Burrows did not wish to discipline Mr. Avila on fabricated grounds nor did he wish to participate in any illegal, race or national origin-based discriminatory disciplinary action. Ms. Caprini became annoyed and frustrated that Mr. Burrows refused to take the requested disciplinary action against Mr. Avila.

41.     In late November 2015, shortly after Burrows refused to discipline Mr. Avila,

Brandi Pearson, Ms. Caprini's assistant, and Mike McPherson, another LPC employee, informed Mr. Burrows that Ms. Caprini had begun "targeting" Mr. Burrows for termination after a meeting between Ms. Caprini and Vice President John Hinton.

42.     Prior to February, 2016, Mr. Burrows' direct supervisor was Operation Manager Ed Bassford. Mr. Bassford was aware of Ms. Caprini's "targeting" of Mr. Burrows and her desire to have Mr. Avila disciplined on the basis of his race and national origin.  However, Mr. Bassford did not act on any of Ms. Caprini's requests and neither Mr. Burrows nor Mr. Avila were treated in an unlawful or disparate manner by Mr. Bassford during his tenure.

43.     On or about February, 2016, Mr. Bassford was replaced by John Johnson as Mr. Burrows' direct supervisor, and the work environment changed drastically for the worst.

44.     Mr. Johnson has a history of making discriminatory and race-based comments and possessing a belligerent attitude towards African American employees at LPC, dating back at least to 2011.

45.     On or about mid-2011, Mr. Johnson was assigned as the direct supervisor for Mike Adams, Sr., an African American, who worked for LPC as a Chief Engineer from 2007 to 2011. During his time working under Mr. Johnson as Chief Engineer, Mr. Adams personally observed Mr. Johnson make several derogatory remarks about African-Americans on the basis of their race.

46.     On or about August 2011, Mr. Adams heard Mr. Johnson state that "white people are smarter and more intelligent than black people."  Mr. Adams also heard Mr. Johnson, on multiple occasions, recount a story about how he beat up "four niggas" at one time in a fight at a bar.  When confronted about his use of the word "nigga," Mr. Johnson replied that it is not inappropriate because that is how "they refer to themselves."

47.     As a result of Mr. Johnson's race-based discriminatory behavior, Mr. Adams ultimately resigned from his position at LPC in October 2011.

48.     Mr. Johnson exhibited similar behavior after he was assigned as the Operation Manager overseeing Mr. Burrows and Mr. Avila on or about February 2016, replacing Mr. Bassford.

49.     Following Mr. Johnson's appointment as Plaintiffs' supervisor on or around February 2016, both Mr. Avila and Mr. Burrows repeatedly faced hostility and outright aggression from Mr. Johnson in the workplace.

50.     Mr. Johnson repeatedly used expletives and inappropriate language towards Mr. Avila and Mr. Burrows on the basis of their respective race.

51.     For example, on at least two occasions, Mr. Jonhson referred to Mr. Burrows as a "nigga," one instance of which was overheard by a contract worker for another company.

52.     On or about spring of 2016, Mr. Johnson unexpectedly entered Mr. Burrows' office and began yelling at him regarding a work-related issue.  During the course of their discussion, Mr. Johnson called Mr. Burrows a "nigga," which was overheard by Donnie Bunker, a Lead Day Porter working for Red Coats, LLC, a contractor of LPC.

53.     Mr. Bunker, an African-American male, was in a nearby hallway when he overheard Mr. Johnson call Mr. Burrows a "nigga."

54.     Approximately one week after Mr. Johnson called Mr. Burrows a "nigga," Mr. Bunker approached Mr. Johnson to discuss a work-related issue.  Mr. Johnson responded, "get away from me, nigga."  This was at least the second time in the span of one week in which Mr. Johnson referred to an African-American man as a "nigga" at LPC.

55.     Approximately one week after Mr. Johnson called Mr. Bunker a "nigga," Mr.

Bunker received a phone call from John Hinton.  Mr. Hinton was aware of Mr. Johnson's racially-charged conversation with Mr. Bunker and attempted to intimidate Mr. Bunker.  Mr. Hinton stated, "you ain't got nothing to do with this, so stay out of it."  Fearing for his job security, Mr. Bunker did not pursue the matter any further.

56.     Shortly thereafter, Mr. Johnson, again, unexpectedly visited Mr. Burrows in his office and began to verbally assault him on the basis of Mr. Burrow's race.  Mr. Johnson aggressively shouted at Mr. Burrows and made threatening statements to him, yelling, "Why the fuck are you in this position?"  Mr. Burrows felt threatened and that Mr. Johnson had verbally assaulted him on the basis of his race. As a result, Mr. Burrows left the confrontation.

57.     Almost immediately, Mr. Johnson called Mr. Burrows on the phone and shouted at him, "Where the fuck are you?"  Mr. Burrows returned to his office, where he explained that he went upstairs to meet with a tenant who wanted to speak with him.  Mr. Johnson got extremely close to Mr. Burrows and replied, "You stay right here until I'm finished."  Mr. Johnson then continued to verbally harass Mr. Burrows and ended the conversation shortly thereafter.

58.     Mr. Johnson exhibited a similar pattern of discriminatory, race-based behavior when interacting with Mr. Avila in the workplace.

59.     On or about late April, 2016, Mr. Johnson asked Mr. Avila to meet with him regarding a request for leave.  During the meeting, Mr. Avila attempted to explain to Mr. Johnson why he needed to see a doctor.  Mr. Johnson responded by yelling at Mr. Avila, telling him to "shut up," and using profanity.

60.     On or about April 22, 2016, Mr. Burrows sent a letter of complaint to Human Resources regarding Mr. Johnson's discriminatory, race-based statements and behavior.

61.     On or about May 2, 2016, Mr. Burrows met with LPC Human Resources

representatives Mr. Hinton and Ms. Hogin to discuss Mr. Johnson's discriminatory, race-based statements and behavior towards himself and Mr. Avila.

62.     Ms. Hogin, instead of rectifying the situation, told Mr. Burrows that *he* should reach out to Mr. Johnson, a man who had called him a "nigga," to "work out [their] problems."  Ms. Hogin stated to Mr. Burrows, "you could do this for us because we know that you are a strong person and also a valuable employee to LPC with senior leadership," and "you just need to put your emotions aside."

63.     During the same meeting on or about May, 2016, Mr. Burrows informed Mr. Hinton that he was aware that Ms. Caprini had met with Mr. Hinton in November 2015 and was "targeting" Mr. Burrows for termination.

64.     Mr. Hinton immediately became defensive and told Mr. Burrows not to use the word "target."  Mr. Burrows requested to be transferred to a different location or for any other relief to make his work environment less hostile.  Mr. Hinton responded, "I am the Director of Property Managers in all of D.C. and Maryland."  Mr. Burrows interpreted this as a threat and felt intimidated by their response to his complaints.

65.     No employee or agent of Defendants investigated Mr. Burrow's complaint nor took any corrective action against Mr. Johnson in response to Mr. Burrow's complaint of discrimination.

66.     Mr. Burrows was caused to suffer, and caused to continue to suffer, from a hostile work environment on the basis of his race.

67.     Due to Mr. Johnson's discriminatory, race-based treatment, Mr. Burrows suffered from physical manifestations of stress, including, but not limited to, difficulty sleeping and panic attacks.

68.     After a visit with his physician, Mr. Burrows applied for and was granted sick leave pursuant to the D.C. Family Medical Leave Act on or about May 12, 2016, by LPC.

69.     On or about June 23, 2016, Mr. Burrows DCFMLA leave was extended until September 2016.

70.     While Mr. Burrows was out of work on DCFMLA leave, Mr. Johnson continued his pattern of discriminatory race-based treatment, targeting Mr. Avila as his next victim.

71.     On or about May 24, 2016, while Mr. Avila was working at his assigned building, Mr. Johnson arrived and demanded to see Mr. Avila's office and several pieces of equipment Mr. Avila was working on.

72.     Mr. Johnson repeatedly yelled at Mr. Avila and used profanity, including insulting comments about Mr. Avila's work ethic, such as calling Mr. Avila's preferred method of ordering replacement parts "bullshit."  When Mr. Johnson discovered that a certain spare part was not in stack, Mr. Johnson referred to Mr. Avila's supervisor, Mr. Burrows, as a "stupid bastard" for failing to have it in stock.

73.     On or about June 6, 2016, Mr. Johnson visited Mr. Avila at a worksite to interrogate Mr. Avila about why he did not respond to emails sent the day before, on a Sunday.

74.     Mr. Avila explained that he reserves between 3:00 PM and 8:00 PM on Sundays for church and religious services.  Mr. Johnson proceeded to yell at Mr. Avila, insulting and berating him for not responding to the emails on a Sunday, something not required of other employees on Sundays who participate in and/or observe for religious services.  Mr. Johnson referred to Mr. Avila's work as "some shit."

75.     Mr. Johnson then commented about some change made on a work computer and proceeded to blame Mr. Burrows, stating, "that stupid bitch, Dwane, probably did."  After berating

Mr. Avila further, Mr. Johnson demanded Mr. Avila open the door for him so he could exit the office, humiliating him further on the basis of Mr. Avila's race and national origin as if Mr. Avila was a servant.

76.     On or about June 13, 2016, Mr. Johnson again visited Mr. Avila while he was working and immediately began yelling at him.  Mr. Johnson asked, "What are you doing here?" He then told Mr. Avila to leave the office and do something else.  Mr. Avila explained that he was performing his job duties, but then left.

77.     As he was leaving the office, Mr. Avila witnessed Mr. Johnson looking through files on a computer in the engineer's office where Mr. Burrows worked.  Mr. Avila then heard Mr. Johnson say in reference to Mr. Burrows, "I finally got this nigga Dwane."

78.     On or about June 11, 2016, Mr. Avila submitted a request for vacation from June 27 through July 1, 2016.  In an email exchange with LPC, Mr. Avila's request was approved.

79.     However, on or about June 14, 2015, the day after Mr. Avila heard Mr. Johnson refer to Mr. Burrows as a "nigga," Mr. Johnson visited Mr. Avila while he was working in order to tell him in person that his vacation request would be denied despite multiple other people approving it before.

80.     When told that others had approved it, Mr. Johnson replied, "I don't care, you will not have a vacation."  Mr. Johnson proceeded to continue yelling at Mr. Avila and pointed his finger in Mr. Avila's face.

81.     On or about June 27, 2016, Mr. Avila became ill and was unable to report to work. On the advice of his doctor, Mr. Avila requested FMLA leave from June 27 through July 27, 2016. After responding to multiple requests for information from Nancy Hogin in Human Resources, Mr. Avila's request for FMLA leave was approved.

82.     While on medical leave, both Mr. Johnson and Mr. Avila were cut off from accessing work-related online resources.

83.     On or about June 20, 2016, Mr. Burrows discovered he no longer had access to his work email.  Similarly, on or about June 29, 2016, Mr. Avila discovered that also no longer had access to his work email and could not access his timesheet electronically as he had been able to prior.

84.     On or about July 28, 2016, Mr. Avila returned to work at LPC, at which time Ms. Caprini almost immediately continued her campaign of race and national origin-based discrimination against him.

85.     On or about August 1, 2016, just a few days after Mr. Avila returned to work, Ms. Caprini arranged a meeting with Mr. Avila, in which she berated him about his work schedule, parking, and about a recent job he had worked on.

86.     At this meeting, Mr. Avila discovered that Ms. Caprini had changed his work schedule, without notice, including changing his start time to be a half hour later than he was arriving, resulting in him not being paid for his first half hour of work.

87.     Throughout August and September 2016, Mr. Avila continued to be the victim of race and national origin-based harassment and discrimination from Ms. Caprini.

88.     On or about September 22, 2016, Mr. Avila saw his doctor, who recommended that Mr. Avila not return to work until at least October 3, 2016 due to work-related stress.

89.     As a result of race and national-origin related discrimination and harassment by Mr. Johnson and Ms. Caprini, and LPC's failure to take any corrective action, Mr. Avila resigned from his employment with Defendants on or about October 2016.

90.     As a result of race and national-origin related discrimination and harassment by Mr.

Johnson and Ms. Caprini, and LPC's failure to take any corrective action, Mr. Burrows resigned

from his employment with Defendants on or about late 2016.

91.     On or about August 1, 2016, Mr. Burrows filed a charge with the United States

Equal Employment Opportunity Commission, alleging unlawful retaliation and discrimination on

the basis of race.

92.     On or about July 24, 2018, the EEOC issued a Right to Sue letter to Mr. Burrows,

which he received a few days later.

93.     On or about August 2, 2016, Mr. Avila filed a charge with the United States Equal

Employment Opportunity Commission, alleging discriminated on the bases of race and national

origin.

94.     On or about July 24, 2018, the EEOC issued a Right to Sue letter to Mr. Avila,

which he received a few days later.

## COUNT I
### Unlawful Race-based Discrimination
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*
### (Avila v. LPC)

95.     Plaintiff Avila adopts and incorporates by reference the allegations contained in the

preceding paragraphs as if fully set forth herein.

96.     Plaintiff Avila, a Hispanic man born in El Salvador, is a member of a protected

class on the basis of his race.

97.     By virtue of the acts described above, Defendants discriminated against Plaintiff

Avila on the basis of his race in violation of 42 U.S.C. §§ 2000e *et. seq.*, Title VII of the Civil

Rights Act of 1962.

98.     By and through Defendant's actions described above, Plaintiff Avila has suffered

harm.

WHEREFORE, Plaintiff Juan Avila demands judgment against Defendant District of Columbia, for an amount to be determined at trial but not less than Five Million Dollars ($5,000,000.00), in compensatory and punitive damages, plus interest, costs, attorney's fees, and further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT II
## NATIONAL ORIGIN DISCRIMINATION
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*
### (Avila v. LPC)

99.     Plaintiff Avila adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

100.     Plaintiff Avila, a Hispanic man born in El Salvador, is a member of a protected class on the basis of his national origin.

101.     By virtue of the acts described above, Defendant discriminated against Plaintiff Avila because of his national origin in violation of 42 U.S.C. §§ 2000e *et. seq.*, Title VII of the Civil Rights Act of 1962.

102.     By and through Defendant's actions described above, Plaintiff Avila has suffered harm.

WHEREFORE, Plaintiff Juan Avila demands judgment against Defendant District of Columbia, for an amount to be determined at trial but not less than Five Million Dollars ($5,000,000.00), in compensatory and punitive damages, plus interest, costs, attorney's fees, and further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

### COUNT III
### RACIAL DISCRIMINATION
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*
### (Burrows v. LPC)

103.     Plaintiff Burrows adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

104.     Plaintiff Burrows, an African-American man, is a member of a protected class on the basis of his race.

105.     By virtue of the acts described above, Defendant discriminated against Plaintiff Burrows because of his race in violation of 42 U.S.C. §§ 2000e *et. seq.*, Title VII of the Civil Rights Act of 1962.

106.     By and through Defendant's actions described above, Plaintiff Burrows has suffered harm.

WHEREFORE, Plaintiff Dwane Burrows demands judgment against Defendant District of Columbia, for an amount to be determined at trial but not less than Five Million Dollars ($5,000,000.00), in compensatory and punitive damages, plus interest, costs, attorney's fees, and further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

### COUNT IV
### RACIAL ORIGIN DISCRIMINATION
### D.C. Human Rights Act, D.C. Code § 2-1411
### (Avila v. LPC)

107.     Plaintiff Avila adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

108.     Plaintiff Avila, a Hispanic man born in El Salvador, is a member of a protected class on the basis of both his race.

109.    By virtue of the acts described above, Defendant discriminated against Plaintiff

Avila because of his race in violation of D.C. Human Rights Act, D.C. Code § 2-1401, *et seq.* By

and through Defendant's actions described above, Plaintiff Avila has suffered harm.

WHEREFORE, Plaintiff Juan Avila demands judgment against Defendant District of

Columbia, for an amount to be determined at trial but not less than Five Million Dollars

($5,000,000.00), in compensatory and punitive damages, plus interest, costs, attorney's fees, and

further and additional relief as the nature of the case may require and which this Honorable Court

shall deem just and proper.

**COUNT V**
**NATIONAL ORIGIN DISCRIMINATION**
**D.C. Human Rights Act, D.C. Code § 2-1411**
**(Avila v. LPC)**

110.    Plaintiff Avila adopts and incorporates by reference the allegations contained in

the preceding paragraphs as if fully set forth herein.

111.    Plaintiff Avila, a Hispanic man born in El Salvador, is a member of a protected

class on the basis of his national origin.

112.    By virtue of the acts described above, Defendant discriminated against Plaintiff

Avila because of his national origin in violation of D.C. Human Rights Act, D.C. Code § 2-1401,

*et seq.*.

113.    By and through Defendant's actions described above, Plaintiff Avila has suffered

harm.

WHEREFORE, Plaintiff Juan Avila demands judgment against Defendant District of

Columbia, for an amount to be determined at trial but not less than Five Million Dollars

($5,000,000.00), in compensatory and punitive damages, plus interest, costs, attorney's fees, and

further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT VI
## RACIAL DISCRIMINATION
### D.C. Human Rights Act, D.C. Code § 2-1411
### (Burrows v. LPC)

114.    Plaintiff Burrows adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

115.    Plaintiff Burrows, an African-American man, is a member of a protected class on the basis of his race.

116.    By virtue of the acts described above, Defendant discriminated against Plaintiff Burrows because of his race and national in violation of D.C. Human Rights Act, D.C. Code § 2-1401, *et seq.*

117.    By and through Defendant's actions described above, Plaintiff Burrows has suffered harm.

WHEREFORE, Plaintiff Dwane Burrows demands judgment against Defendant District of Columbia, for an amount to be determined at trial but not less than Five Million Dollars ($5,000,000.00), in compensatory and punitive damages, plus interest, costs, attorney's fees, and further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT VII
## HOSTILE WORK ENVIROMENT (RACIAL)
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*
### (Avila v. LPC)

118.    Plaintiff Avila adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

119.    Plaintiff Avila, a Hispanic man born in El Salvador, is a member of a protected class on the basis of his race.

120.    By virtue of the acts described above, Defendant created a hostile work environment for Plaintiff Avila because of his race in violation of 42 U.S.C. §§ 2000e *et. seq.*, Title VII of the Civil Rights Act of 1962.

121.    By and through Defendant's actions described above, Plaintiff Avila has suffered harm.

WHEREFORE, Plaintiff Juan Avila demands judgment against Defendant District of Columbia, for an amount to be determined at trial but not less than Five Million Dollars ($5,000,000.00), in compensatory and punitive damages, plus interest, costs, attorney's fees, and further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

<u>COUNT VIII</u>
**HOSTILE WORK ENVIROMENT (NATIONAL ORIGIN)**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq***
**(Avila v. LPC)**

122.    Plaintiff Avila adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

123.    Plaintiff Avila, a Hispanic man born in El Salvador, is a member of a protected class on the basis of his national origin.

124.    By virtue of the acts described above, Defendant created a hostile work environment for Plaintiff Avila because of his national origin in violation of 42 U.S.C. §§ 2000e *et. seq.*, Title VII of the Civil Rights Act of 1962.

125.    By and through Defendant's actions described above, Plaintiff Avila has suffered harm.

21

WHEREFORE, Plaintiff Juan Avila demands judgment against Defendant District of Columbia, for an amount to be determined at trial but not less than Five Million Dollars ($5,000,000.00), in compensatory and punitive damages, plus interest, costs, attorney's fees, and further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

### COUNT IX
### HOSTILE WORK ENVIROMENT (RACIAL)
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*
### (Burrows v. LPC)

126.     Plaintiff Burrows adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

127.     Plaintiff Burrows, an African-American man, is a member of a protected class on the basis of his race.

128.     By virtue of the acts described above, Defendant created a hostile work environment for Plaintiff Burrows because of his race in violation of 42 U.S.C. §§ 2000e *et. seq.*, Title VII of the Civil Rights Act of 1962.

129.     By and through Defendant's actions described above, Plaintiff Burrows has suffered harm.

WHEREFORE, Plaintiff Dwane Burrows demands judgment against Defendant District of Columbia, for an amount to be determined at trial but not less than Five Million Dollars ($5,000,000.00), in compensatory and punitive damages, plus interest, costs, attorney's fees, and further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT X
## HOSTILE WORK ENVIROMENT (RACIAL)
### District of Columbia Human Rights Act of 1977, D.C. Code §2-1401, *et. seq.*
### (Avila v. LPC)

130.     Plaintiff Avila adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

131.     Plaintiff Avila, a Hispanic man born in El Salvador, is a member of a protected class on the basis of his race.

132.     By virtue of the acts described above, Defendant created a hostile work environment for Plaintiff Avila because of his race in violation of District of Columbia Human Rights Act of 1977, D.C. Code §2-1401, *et. seq.*

133.     By and through Defendant's actions described above, Plaintiff Avila has suffered harm.

WHEREFORE, Plaintiff Juan Avila demands judgment against Defendant, for Five Million Dollars ($5,000,000.00) in compensatory and punitive damages plus interest, as well as attorneys fees and costs, and further and additional relief as the nature of the cause may require and which this Honorable Court shall deem just and proper.

## COUNT XI
## HOSTILE WORK ENVIROMENT (NATIONAL ORIGIN)
### District of Columbia Human Rights Act of 1977, D.C. Code §2-1401, *et. seq.*
### (Avila v. LPC)

134.     Plaintiff Avila adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

135.     Plaintiff Avila, a Hispanic man born in El Salvador, is a member of a protected class on the basis of his national origin.

136.     By virtue of the acts described above, Defendant created a hostile work

environment for Plaintiff Avila because of his national origin in violation of District of Columbia Human Rights Act of 1977, D.C. Code §2-1401, *et. seq.*

137.    By and through Defendant's actions described above, Plaintiff Avila has suffered harm.

WHEREFORE, Plaintiff Juan Avila demands judgment against Defendant, for Five Million Dollars ($5,000,000.00) in compensatory and punitive damages plus interest, as well as attorneys fees and costs, and further and additional relief as the nature of the cause may require and which this Honorable Court shall deem just and proper.

**COUNT XII**
**HOSTILE WORK ENVIROMENT (RACIAL)**
**District of Columbia Human Rights Act of 1977, D.C. Code §2-1401, *et. seq.***
**(Burrows v. LPC)**

138.    Plaintiff Burrows adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

139.    Plaintiff Burrows, an African-American man, is a member of a protected class on the basis of his race.

140.    By virtue of the acts described above, Defendant created a hostile work environment for Plaintiff Burrows because of his race in violation of District of Columbia Human Rights Act of 1977, D.C. Code §2-1401, *et. seq.*

141.    By and through Defendant's actions described above, Plaintiff Burrows has suffered harm.

WHEREFORE, Plaintiff Dwane Burrows demands judgment against Defendant, for Five Million Dollars ($5,000,000.00) in compensatory and punitive damages plus interest, as well as attorneys fees and costs, and further and additional relief as the nature of the cause may require and which this Honorable Court shall deem just and proper.

**COUNT XIII**
**RETALIATION**
**42 U.S.C. §§ 2000e *et. seq.*, Title VII of the Civil Rights Act of 1964**
**(Burrows v. LPC)**

142.     Plaintiff Burrows adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

143.     Plaintiff Burrows engaged in protected activity when he refused to participate in or condone Defendant's discrimination against Plaintiff Avila and voiced objections to Defendant's racially motivated behavior.

144.     Plaintiff Burrows also engaged in protected activity when he reported Defendant's unlawful discrimination to LPC's Human Resources department and the Equal Employment Opportunity Commission.

145.     By virtue of the acts described above, Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.*, by retaliating against Plaintiff for his protected activity.

146.     By and through Defendant's actions described above, Plaintiff has suffered harm.

WHEREFORE, Plaintiff Dwane Burrows demands judgment against Defendant, for Five Million Dollars ($5,000,000.00) in compensatory and punitive damages plus interest, as well as attorneys fees and costs, and further and additional relief as the nature of the cause may require and which this Honorable Court shall deem just and proper.

**COUNT XIV**
**RETALIATION**
**42 U.S.C. §§ 2000e *et. seq.*, Title VII of the Civil Rights Act of 1964**
**(Avila v. LPC)**

147.     Plaintiff Avila adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

148.     Plaintiff Avila engaged in protected activity when he reported Defendant's unlawful discrimination to LPC's Human Resources department and the Equal Employment Opportunity Commission.

149.     By virtue of the acts described above, Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.*, by retaliating against Plaintiff Avila for his protected activity.

150.     By and through Defendant's actions described above, Plaintiff has suffered harm.

WHEREFORE, Plaintiff Juan Avila demands judgment against Defendant, for Five Million Dollars ($5,000,000.00) in compensatory and punitive damages plus interest, as well as attorneys fees and costs, and further and additional relief as the nature of the cause may require and which this Honorable Court shall deem just and proper.

## COUNT XV
## RETALIATION
**District of Columbia Human Rights Act of 1977, D.C. Code §2-1401, *et. seq.***
**(Burrows v. LPC)**

151.     Plaintiff Burrows adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

152.     Plaintiff Burrows engaged in protected activity when he refused to participate in or condone Defendant's discrimination against Plaintiff Avila and voiced objections to Defendant's racially motivated behavior toward himself and Plaintiff Avila.

153.     Plaintiff Burrows also engaged in protected activity when he reported Defendant's unlawful discrimination to LPC's Human Resources department and the Equal Employment Opportunity Commission.

154.     By virtue of the acts described above, Defendant violated District of Columbia Human Rights Act of 1977, D.C. Code §2-1401, *et. seq.*, by retaliating against Plaintiff Burrows

for his protected activity.

155.    By and through Defendant's actions described above, Plaintiff has suffered harm.

WHEREFORE, Plaintiff Dwane Burrows demands judgment against Defendant, for Five

Million Dollars ($5,000,000.00) in compensatory and punitive damages plus interest, as well as

attorneys fees and costs, and further and additional relief as the nature of the cause may require

and which this Honorable Court shall deem just and proper.

### COUNT XVI
### RETALIATION
### District of Columbia Human Rights Act of 1977, D.C. Code §2-1401, *et. seq.*
### (Avila v. LPC)

156.    Plaintiff Avila adopts and incorporates by reference the allegations contained in

the preceding paragraphs as if fully set forth herein.

157.    Plaintiff Avila engaged in protected activity when he reported Defendant's

unlawful discrimination to LPC's Human Resources department and the Equal Employment

Opportunity Commission.

158.    By virtue of the acts described above, Defendant violated District of Columbia

Human Rights Act of 1977, D.C. Code §2-1401, *et. seq.*, by retaliating against Plaintiff Avila for

his protected activity.

159.    By and through Defendant's actions described above, Plaintiff has suffered harm.

WHEREFORE, Plaintiff Juan Avila demands judgment against Defendant, for Five

Million Dollars ($5,000,000.00) in compensatory and punitive damages plus interest, as well as

attorneys fees and costs, and further and additional relief as the nature of the cause may require

and which this Honorable Court shall deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiffs demand a trial by a jury of their peers on all counts so triable.

DATED: October 22, 2018

Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

_/s/_ Brian J. Markovitz_____
Brian J. Markovitz (D.C. Bar No. 481517)
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
301.220.2200 (T)
301.220.1214 (F)
bmarkovitz@jgllaw.com

*Counsel for Plaintiffs*